Filed 2/10/15  P. v. Boone CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RODNEY ALAN BOONE,<br><br>    Defendant and Appellant. | G049381<br><br>(Super. Ct. No. 12CF0169)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William Lee Evans, Judge.  Affirmed.

Romney, Baruch, Patison & Jaramillo and Brent F. Romney for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Sharon L. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Rodney Alan Boone pleaded guilty to a single count of felony grand theft (Pen. Code, § 487)[1] and admitted as true a charged enhancement, property damage over $1.3 million (§ 12022.6, subd. (a)(3)). The court imposed a sentence of six years (five years to be served in county jail, followed by one year of parole). The sentence was composed of the upper term of three years for felony grand theft (§§ 489, subd. (c), 1170, subd. (h)(1)) and three consecutive years for the property damage enhancement (§ 12022.6, subd. (a)(3)). The court also ordered defendant to pay $694,396.76 in restitution to the theft victim. We reject defendant's challenges to his sentence and the restitution order.

FACTS

Defendant was charged with 41 counts of grand theft. The parties agreed that defendant faced a total maximum punishment of 34 years, eight months incarceration if he were convicted on all counts and charged enhancements thereto. As part of a negotiated agreement with the district attorney, defendant pleaded guilty to count 1 and specified enhancements, and the district attorney dismissed the remaining 40 counts. The district attorney also agreed that defendant would face a maximum punishment of six years (i.e., a "6 year lid"). Defendant agreed he could be ordered to pay restitution on counts 2 through 41 in an amount to be determined by the probation department, even though these counts would be dismissed.

In his guilty plea form, the following factual basis for his guilt was provided: "On or about and between August 2005 and February 2008, I unlawfully and intentionally stole $1,617,126.99 from" Anthony Osterkamp and his affiliated companies. Basically, in conducting business on behalf of Osterkamp, defendant submitted a series of

_____

[1] All statutory references are to the Penal Code.

2

fraudulent documents detailing purported expenses. Defendant then deposited the ensuing checks into his own account.

In assessing defendant's sentence for grand theft, the court discussed the various aggravating and mitigating factors in the case. As aggravating factors, the court first cited the "planning" and "sophistication" required on defendant's part to conduct and conceal his scheme over several years. Moreover, the court referenced defendant's position of trust and confidence with the victim; "Mr. Osterkamp obviously just turned this business over to [defendant] and trusted [defendant] to carry out the functions of the business." Osterkamp was affected by the crime in that he "had to defer his retirement and continue actively working." The court also emphasized the total monetary value — approximately $1.6 million — as an aggravating factor. As mitigating circumstances, the court identified the lack of prior criminal conduct, the lack of criminal conduct subsequent to the discovery of the acts at issue, defendant's efforts to make restitution, defendant's remorse, the lack of danger to others posed by defendant, defendant's prompt acknowledgement of wrongdoing upon being confronted by investigators, and defendant's close relationship with family members. The court also mentioned defendant's admitted gambling problem as an "unusual circumstance," and the primary motivation for defendant's theft.

The court declined to grant probation and selected the upper three-year term (out of a 16 month, two year, and three year triad). The court then declined to strike the section 12022.6, subdivision (a)(3) enhancement, and added the consecutive three-year term to defendant's sentence. The court opted to impose a split sentence, pursuant to which defendant would serve five years in county jail and one year on parole.

As to victim restitution, the court calculated the total loss incurred by Osterkamp as $1,751,396.76, encompassing the amount stolen by defendant, the fees paid by Osterkamp to private investigators, and the fees paid by Osterkamp to a civil attorney following the discovery of the theft. The court then offset several transfers to Osterkamp

3

that had already been made by defendant following the discovery of defendant's scheme: (1) stock valued at $1,000; (2) $56,000 in cash; and (3) a residential property appraised at approximately $2 million with $1 million in equity at the time of transfer.[2]  The court awarded the net amount, $694,396.76, as restitution to Osterkamp.[3]

## DISCUSSION

Defendant raises three contentions on appeal.  First, defendant claims the court erred by selecting the upper term sentence for his grand theft conviction.  Second, defendant contends the court improperly relied on the same fact (i.e., the size of the theft, $1.6 million) to impose both the enhancement and the upper term for grand theft.  Third, defendant asserts the court abused its discretion by ordering him to pay criminal restitution in the full amount of the proven harm despite a prior civil arrangement between defendant and Osterkamp.

*Court Did Not Abuse its Discretion in Selecting the Upper Term*

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . .  The court shall select the term which, in the court's discretion, best serves the interests of justice."  (§ 1170, subd. (b).)

---

[2]  Unfortunately, Osterkamp ended up losing money on the residential property because its appraised value at the time of its conveyance by defendant (in early 2008) did not comport with the market reality when Osterkamp ultimately sold the property.  The court, however, concluded that the parties to the transaction intended for the conveyance of the house to partially satisfy defendant's debt to Osterkamp in the amount of equity present based on the appraised value at the time of transfer.

[3]  We set forth additional factual material pertaining to the restitution award in the appropriate section below.

4

"In exercising his or her discretion in selecting one of the three authorized prison terms . . . , the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).) The court cited two aggravating factors explicitly listed in California Rules of Court, rule 4.421(a) in support of its selection of the upper term of three years for felony grand theft — "[t]he manner in which the crime was carried out indicates planning, sophistication, or professionalism," and taking "advantage of a position of trust or confidence to commit the offense." (Cal. Rules of Court, rule 4.421(a)(8), (11).) The court also listed other factors it deemed to be aggravating, including the impact on Osterkamp's life and the huge monetary sum stolen by defendant (approximately $1.6 million). The court also identified a series of factors in mitigation, including defendant's lack of a criminal record, his gambling problem, his early acknowledgement of wrongdoing, and his efforts at restitution. (Cal. Rules of Court, rule 4.423(b).)

Defendant suggests that the aggravating factors did not outweigh the mitigating factors, and further posits that in such circumstance the court is required to impose the middle term. We disagree. It was for the trial court to balance the aggravating and mitigating circumstances, and the court was well within its discretion in selecting the upper term under the circumstances of this case. (See, e.g., *People v. Lamb* (1988) 206 Cal.App.3d 397, 401 [describing court's broad discretion in balancing factors].) We note that the mitigating factors trumpeted by defendant had already played a key role in allowing defendant to limit his exposure to criminal punishment by way of the plea agreement. Without this context, it is misleading to advance the supposed unfairness of an upper term sentence on a single grand theft count despite the presence of several compelling mitigating factors.

5

*No Reversible Double Counting Error Occurred*

"[T]he court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (§ 1170, subd. (b).) Defendant argues the court erred by relying on the amount stolen by defendant as an aggravating factor, when the same circumstance supported the three-year enhancement relied on by the court to impose an additional three-year term. (See § 12022.6, subd. (a)(3) ["If the loss exceeds one million three hundred thousand dollars ($1,300,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of three years"].)

This claim fails. First, defendant forfeited his assertion of sentencing error by failing to raise it below. "[T]he waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are . . . cases in which the court purportedly erred because it double-counted a particular sentencing factor . . . ." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Defendant did not object to the court's reliance on the amount of money stolen by defendant as one of several aggravating factors. This issue is therefore forfeited on appeal.

Even if the issue were not forfeited, any error was harmless. (See *People v. Coleman* (1989) 48 Cal.3d 112, 166 [harmless dual use of factor does not require resentencing]; *People v. Moreno* (1982) 128 Cal.App.3d 103, 109-110 [same].) The court relied on multiple aggravating factors in this case and did not focus on the amount of money stolen as the single, determinative factor. It is not reasonably probable that the court would have sentenced defendant differently had it excluded consideration of the amount of loss from its decision.[4]

---

[4] Defendant did not discuss whether this issue was forfeited or whether the error was harmless in his opening brief. Nor did he file a reply brief to respond to the

6

*Restitution Order Was Not an Abuse of Discretion*

"[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f).) "[W]e review the trial court's restitution order for abuse of discretion." (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)

The court awarded $694,396.76 in restitution to Osterkamp, based on a total economic loss of $1,751,396.76, offset by prior payments by defendant to Osterkamp (in cash, stock, and title to a residential property) valued at $1,057,000. Defendant claims the court erred by awarding any restitution to Osterkamp because, in his view, prior transfers of assets to Osterkamp were part of an oral contract (between defendant and his wife, on the one hand, and Osterkamp — by and through his agents — on the other) whereby Osterkamp (and his agents) would not turn defendant in to the police if defendant (and his wife) conveyed ownership of their home and continued to work to repay Osterkamp.

Defendant's argument is based on the unusual circumstances of this case. As detailed by defendant in a letter to the court, his scheme was uncovered by Osterkamp's private investigators, who confronted defendant with the results of their investigation in March 2008. Defendant signed a written confession at the confrontation. Defendant also consented to a thorough search of his financial records by the investigators, who confirmed that the family residence was the only asset of significant value. Both defendant and his wife claim that she was threatened at a subsequent

Attorney General's arguments pertaining to forfeiture and harmless error, so we cannot address any position he might have taken on these points.

7

meeting to convey the house or face the prospect of defendant being turned in to the authorities. Both defendant and his wife signed the conveyance of the property. But Osterkamp's civil attorney and private investigator denied in their testimony that any threats were made to defendant or his wife to the effect that someone would notify the police about defendant's conduct if the house *was not* signed over to Osterkamp. Osterkamp's agents also denied that they implied defendant would not be turned in to the police if the house *was* conveyed to Osterkamp.

The court did not abuse its discretion in making the restitution award. For one, defendant identifies no authority for the proposition that a partial payment of restitution under these circumstances can operate as bar to subsequent recovery of the remainder of economic harm upon the wrongdoer's conviction. The factual record is clear that Osterkamp did not receive full restitution for the economic harm found by the court.

Secondly, the court's view of the parties' arrangement (contractual or otherwise) was proper in the context of a criminal restitution hearing. The court found that the actual agreement between the parties was to credit the equity value of the property at the time of conveyance in March 2008; the court thereby refused to award the full amount of restitution sought by the district attorney on behalf of Osterkamp. But the court rightly refused to treat the parties' civil arrangement (whether properly characterized as a contract or not) as a bar to criminal restitution. (Cf. *People v. Bernal* (2002) 101 Cal.App.4th 155, 161-164 [victim's civil settlement with defendant's insurance carrier does not preclude restitution award for the difference between settlement amount and actual economic harm in criminal matter].) If Osterkamp's agents engaged in any wrongdoing in procuring the conveyance of real property, such wrongdoing should be dealt with appropriately in a different forum. The court here, however, was tasked with determining the economic loss suffered by Osterkamp as a

8

result of defendant's criminal conduct.  The court fairly and properly exercised its discretion in completing this task.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

BEDSWORTH, J.

9